# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERYL ANN BLANCHARD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-18-274-BMJ ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cheryl Ann Blanchard, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's final decision finding she was not disabled under the Social Security Act. The parties consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner filed the Administrative Record (AR) [Doc. No. 15], and both parties briefed their respective positions.[1] For the reasons stated below, the Commissioner's decision is affirmed.

## I.     Procedural Background

On February 20, 2015, Plaintiff protectively filed an application for disability insurance benefits. *See* AR 11. The Social Security Administration denied the application initially and on reconsideration. AR 38, 55. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated March 10, 2017. AR 8-23. The Appeals Council denied Plaintiff's request for review. AR 1-5. Thus, the decision of the ALJ became the final decision of the

---

[1] Citations to the parties' submissions reference the Court's CM/ECF pagination.

Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff seeks judicial review of this final agency decision.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined Plaintiff had not engaged in substantial gainful activity between April 1, 2012, her alleged onset date, and March 31, 2016, her date last insured. AR 13.

At step two, the ALJ determined Plaintiff suffered from the severe impairments of degenerative disc disease, degenerative joint disease, and depression. *Id.* At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13-15.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: [Plaintiff] can perform simple and some complex tasks; can relate to others on a superficial basis; and can adapt to work situations.

AR 16-18. Relying on the testimony of a vocational expert (VE), the ALJ then found Plaintiff could perform her past relevant work as a Cashier II. AR 18. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. *Id.*

## III.    Issues Presented for Judicial Review

Plaintiff contends the ALJ failed to discuss relevant evidence in the record. Further, Plaintiff asserts the ALJ mischaracterized Plaintiff's past relevant work, and as a result, the ALJ's

2

analysis was insufficient to determine whether Plaintiff was capable of performing it. Neither contention requires reversal.

IV. **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V. **Analysis**

**A. The ALJ Did Not Fail to Discuss Probative Evidence**

Plaintiff contends the ALJ failed to discuss evidence which "substantially undermined" his finding that Plaintiff could perform light work on a regular and continuing basis. Pl.'s Br. 15. An ALJ must "consider all evidence" in the record when making a decision and may not pick-and-choose among medical reports. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

However, where the court "can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Id.* The Tenth Circuit cautions courts not to insist on technical perfection. *Id.* The Court analyzes Plaintiff's arguments under this framework.

First, Plaintiff contends the ALJ's discussion of medical records from Accident Care and Treatment Center (ACTC) were "rather limited."[2] Pl.'s Br. 15. While Plaintiff concedes that the ALJ addressed the treatment records, including some specifics, she asserts the ALJ should have referenced findings of tenderness, muscle spasms, as well as limited and painful mobility in her spine and/or shoulders with occasional visible discomfort or positive straight leg raise testing. *Id.* Further, Plaintiff argues the ALJ did not note Mr. Dennis McKee, PA-C's findings of cervical rotation below sixty degrees bilaterally and Plaintiff's tenderness and spasm in her trapezius, thoracic, and lumbar musculature. *Id.* In the decision, however, the ALJ summarized Plaintiff's treatment at ACTC, describing its duration, the types of treatment Plaintiff received, some of Plaintiff's alleged symptoms—including spasms—and some of the medical providers' findings. AR 16-17. Although the ALJ did not go into appointment-by-appointment detail, "[t]here is obviously no requirement that the ALJ reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010). Further, although the ALJ did not address each specific medical finding contained in the thirty-five pages of medical records from the ACTC, an "ALJ is not required to discuss every piece of evidence." *Wall*, 561 F.3d at 1067 (10th Cir. 2009)

---

[2] Plaintiff visited with multiple medical practitioners at ACTC between December 16, 2013 and March 25, 2014. AR 261-274.

(internal quotation omitted). As such, the Court finds no error with the ALJ's consideration of the ACTC records.[3]

Next, Plaintiff asserts the ALJ provided an incomplete summary of Plaintiff's MRI findings. Pl.'s Br. 15-16. Plaintiff underwent two MRIs on February 20, 2014. AR 290-293, 356-359.[4] The ALJ wrote:

> Radiological imaging of both cervical and lumbar spine revealed posterior protrusion at C3-4, protrusion at C4-5, flattening at C5-6, protrusion at C6-7. A lumbar MRI revealed 5 mm protrusion at L5-81 [sic] and narrowing at the foramina S1 and exiting L5 nerve routes. At L4-5, there was also disc protrusion and pathology at L3-4, as well.

AR 17. Plaintiff also underwent an MRI on March 13, 2014, AR 288-289, about which the ALJ wrote: "An MRI revealed borderline to mild right greater than left foraminal narrowing at T1-2 due to hypertrophic facet joints." AR 16. Plaintiff contends the ALJ should have discussed additional findings contained in the radiologist reports, including: borderline or slight spinal canal narrowing and moderate to severe neuroforaminal narrowing at C4-5 and C5-6 levels; the likely compromise of an exiting C5 nerve root and compromise of both exiting C6 nerve roots that could contribute to bilateral C6 radiculopathy; moderate-to-severe lumbar neuroforaminal narrowing at L5-S1; the L5 nerve root contact could contribute to multilevel radiculopathy; disc protrusions and

---

[3] The Court also notes that while Plaintiff asserts the ALJ should have discussed Mr. McKee's finding that Plaintiff's cervical rotation was below sixty degrees bilaterally, Dr. Stanley Dombek, M.D.—a physician at ACTC—found that Plaintiff's cervical rotation was seventy or seventy-five percent bilaterally. AR 266-267. Further, Plaintiff had negative straight leg examinations in addition to positive ones. AR 264. An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). This evidence is not uncontroverted and Plaintiff has not set forth any persuasive argument that the evidence is significantly probative.

[4] AR 290-293 and AR 356-359 are identical records, contained in Exhibits 2F and 4F of the record. Plaintiff cites Exhibit 2F while the ALJ cites Exhibit 4F when referring to these MRI reports.

structural hypertrophy causing mild or moderate neuroforaminal narrowing at T5-6, T6-7, and T9-10 levels; and possible contact of an exiting T9 nerve root. Pl.'s Br. 15-16 (*citing* AR 288-293). In other words, Plaintiff again argues the ALJ should have engaged in a deeper discussion regarding medical records he considered. But as stated above, there is no requirement for an ALJ to discuss every piece of evidence. *See Wall*, 561 F.3d at 1067 (10th Cir. 2009). Furthermore, Plaintiff does not provide any reasons that the evidence might be significantly probative.[5] Therefore, the Court finds no reversible error with regard to the depth of the ALJ's discussion of the MRI reports.

Plaintiff also contends the ALJ did not fully discuss her treatment with Dr. Scott A. Mitchell, D.O. Pl.'s Br. 16. Plaintiff asserts the ALJ should have discussed comments regarding her lack of improvement after two cervical epidural steroid injections. Pl.'s Br. 16 (*citing* AR 17, 327, 336, 330, 333, 336, 340, 347-348). The ALJ noted Plaintiff's steroid injections during his discussion of treatment at ACTC.[6] AR 16. Although the ALJ did not specifically reference Plaintiff's lack of improvement after her two steroid injections, the ALJ addressed Dr. Mitchell's recommendation of surgery. AR 17. Dr. Mitchell recommended surgery because he did not believe any treatment he could provide would be beneficial. *See* AR 327 ("At this point I do not feel I have an intervention that is going to be helpful to [Plaintiff]. I think she [sic] basically surgery is really her only course."). Thus, by referencing Dr. Mitchell's recommendation for surgery, the ALJ effectively addressed the steroid injections not being beneficial. Further, Plaintiff later advised another doctor that she did not want surgery because she was uncertain about the

---

[5] The Court will neither address undeveloped arguments nor wade through the records to find evidence to support such arguments. *See Wall*, 561 F.3d at 1066.

[6] The ACTC records address Plaintiff's steroid injections with Dr. Mitchell. AR 261-262.

outcome. AR 17. Plaintiff contends the ALJ should have discussed how Plaintiff's decision to refuse surgery "affected his findings even though such fear was a valid justification for doing so (especially given that [Plaintiff] would plainly require procedures on both her neck and back)." *Id.* at 16-17. The ALJ discussed the evidence in the record: Dr. Mitchell recommended surgery and Plaintiff refused it. Without citing to any portion of the record, Plaintiff speculates her fear of an unsuccessful surgery was a valid justification for her refusal. But the Court cannot reconsider the evidence to make such a determination. *See Bowman*, 511 F.3d at 1272. As such, there is no error with the ALJ's discussion of Plaintiff's treatment with Dr. Mitchell.

Finally, Plaintiff claims the ALJ "provided a less than complete picture" of Plaintiff's daily activities. Pl.'s Br. 17. Plaintiff contends that while the ALJ referenced her ability address her daily needs and care for her personal hygiene, the ALJ should have also noted that her daily routine involved little more than watching television and trying to participate in a small class twice a week. *Id.* While Plaintiff listed only watching television and participation in a small class when describing what she does between the time she wakes up until she goes to bed, AR 214, she ignores many other activities she participates in multiple times per week. The ALJ noted Plaintiff's attendance at Bible study and choir at church, going outside daily, and shopping. AR 14, *see also* AR 216, 217 (Plaintiff's function report noting that she goes outside once per day, goes shopping twice per month and attends Bible study and choir rehearsal every week). Thus, Plaintiff's argument is based on a false premise.

Plaintiff also asserts the ALJ should have noted that she required assistance with certain aspects of dressing herself and caring for her hair beyond washing it. Pl.'s Br. 17. Further, Plaintiff contends the ALJ mischaracterized her ability to household chores because Plaintiff described only vacuuming and sweeping a couple of times per month and needing help from others in doing the

7

same. *Id.* In addition, while the ALJ stated that Plaintiff could occasionally organize a shopping outing and handling her own financial affairs, Plaintiff's shopping trips only occurred twice per month and Plaintiff stated her abilities regarding financial matters had changed. *Id.* However, Plaintiff does not explain how any of this evidence limits her functional abilities in ways not already accounted for in the RFC, and thus fails to show that the evidence has any significantly probative value. *See Clifton*, 79 F.3d at 1009-10; *see also Shiplett v. Astrue*, 456 F. App'x 730, 734 (10th Cir. 2012) (unpublished) (finding evidence that did not "contradict the ALJ's RFC assessment" did not constitute significantly probative evidence the ALJ was required to discuss).[7]

For the reasons stated above, Plaintiff's contention that the ALJ erred in discussing the evidence does not amount to reversible error.

B. **The ALJ Did Not Err With Regard to Classifying Plaintiff's Past Relevant Work**

Plaintiff contends the ALJ erred when determining her past relevant work. Plaintiff contends instead of Cashier II, she should have been considered a Truck Rental Clerk. The Court concludes Plaintiff has not met her burden of proving the ALJ misclassified Plaintiff's past relevant work as a Cashier II.

An ALJ "may rely on the [DOT's] job description for [Plaintiff's] job category as presumptively applicable to a claimant's prior work." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (internal quotation omitted). Nevertheless, Plaintiff "may overcome the presumption that the [DOT's] entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Id.* at 1051-52 (internal quotation omitted). In order to overcome the

---

[7] Furthermore, Petitioner does not challenge the ALJ's symptom analysis.

presumption, Plaintiff "must show that the duties of [her] prior job were sufficiently distinct from the duties of a [Cashier II] as described in the [DOT] to constitute a different line of work." *Id.* at 1052 (internal quotation omitted).

In the opening remarks of the hearing, Plaintiff's attorney noted that her past relevant work included cashier. AR 29. When asked to identify Plaintiff's past relevant work, the VE responded in part: "I showed work as a cashier II, with a DOT code of 211.462-010. Classified light, unskilled, SVP 2. Described into the medium category at times." AR 30. While Plaintiff's counsel questioned the VE at the hearing, he did not ask whether Plaintiff's past relevant work as a cashier should have been considered under a different job title. AR 29-35. The ALJ ultimately found, with the assistance of the VE's testimony, Plaintiff could perform her past relevant work as a Cashier II as it is generally performed. AR 18.

In her Work History Report, the evidence on which she relies, Plaintiff identified her job as a cashier at U-Haul Truck Rentals. AR 197. Plaintiff described her job duties as: "service trucks, cashier, sold boxes and other moving supplies, telephone communications, as well as aided in driving trucks." AR 198. Plaintiff also noted she stocked, moved supplies, and cleaned debris from trucks. *Id.* The DOT defines the position of Cashier II as follows:

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor

9

> screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. . . .

DICOT, 211.462-010, 1991 WL 671840.

The Court finds that Plaintiff fails to meet her burden of showing the duties of her prior job were sufficiently distinct from Cashier II to constitute a different job altogether. Plaintiff's Work History Report indicates she performed cashier duties at her job, and she does not provide any information from the record which would differentiate the cashier tasks she actually performed from those performed by a Cashier II. Plaintiff also asserts she sold boxes and other moving supplies to customers, but the DOT description of Cashier II contemplates that the position of Cashier II may sell goods to customers as well. To be sure, Plaintiff lists certain tasks that are not in the DOT job description of a Cashier II, but the performance of some tasks not listed in a DOT job description does not mean a claimant's past relevant work was misclassified. *See O'Dell v. Shalala*, 44 F.3d 855, 860 (10th Cir. 1994) (rejecting the claimant's argument that the VE's classification of her former work should be set aside and noting that although the claimant's former job may have included additional duties, "there [was] no evidence that the position of food preparation supervisor generally encompasses such duties"). Therefore, the evidence presented by Plaintiff fails to show that the duties of a Cashier II are sufficiently distinct from her prior job duties.

The Court also notes that Plaintiff's stated duties do not fit entirely within the position of Truck Rental Clerk. The DOT defines the Truck Rental Clerk as:

> Rents trailers, trucks, and power-driven mobile machinery and equipment: Talks with customer to determine type of equipment needed, such as vacation, boat, or open trailer, or moving truck or moving-van trailer, or cement mixer. Quotes rental rates and collects security deposit. Prepares rental-agreement form. Directs yard personnel to hitch trailer to customer's vehicle or bring truck or power-driven mobile equipment to customer. Computes rental charges, collects money, makes change, and returns deposit. May

> pull trailer into position and fasten appropriate hitch to customer's vehicle. May splice wires from trailer's taillights onto wires of customer's vehicle's taillights to provide brake and turn signals to trailer. May advise customer on type of equipment to rent, depending on work to be done. . . . May be designated according to type of equipment rented as . . . Truck Rental Clerk (automotive ser.).

DICOT 295.467-022, 1991 WL 672598. Of the duties listed by Plaintiff, only the cashier duties and driving duties apply to the Truck Rental Clerk position.

Furthermore, although the state agency vocational analysts considered Plaintiff's past relevant work to be that of a Truck Rental Clerk, AR 52-53, 70-71, Plaintiff has not provided any case law which makes such a finding dispositive. On the other hand, an ALJ is permitted to rely on the VE's categorization of Plaintiff's past relevant work. *Doyal*, 331 F.3d at 761 (internal quotation omitted) ("An ALJ may rely on information supplied by the VE at step four."); *see also Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (unpublished) (finding the ALJ's analysis was sufficient when relying on the VE's testimony identifying Plaintiff's past relevant work by job title, exertional level, skill level, and DOT code); *see also* 20 C.F.R. § 416.960(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work . . . ."). Additionally, "an ALJ is generally entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. *Wall*, 561 F.3d at 1062 (10th Cir. 2009).

For the reasons stated above, the Court concludes Plaintiff fails to meet her burden of proving that the job duties from her prior work were sufficiently distinct from the duties of a

Cashier II as defined in the DOT. As such, the ALJ did not err in his classification of Plaintiff's past relevant work.[8]

## VI. Conclusion

For the reasons set forth, the decision of the Commissioner is AFFIRMED.

ENTERED this 16th day of January, 2019.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE

---

[8] Because the Court finds that the ALJ did not err in his classification of Plaintiff's past relevant work, the Court does not reach the Commissioner's arguments that Plaintiff waived this issue by not raising it at the hearing in front of the ALJ or that any error should be considered harmless because Plaintiff could perform the Truck Rental Clerk job as generally performed.